FILED

JAN - 8 2017

# UNITED STATES DISTRICT COURT

CLERK, U S DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST LOUIS OFFICE

for the

Southern District of Illinois

Jeffrey Blaney _____ )
_____ )   Case Number: 3:17-cv-01099 DRH
_____ )   _____
_____ )        (Clerk's Office will provide)
_____ )   Second Amended
*Plaintiff/Petitioner(s)* )   ☒ CIVIL RIGHTS COMPLAINT
v. )   pursuant to 42 U.S.C. §1983 (State Prisoner)
Salvador Godinez, Director, )   ☐ CIVIL RIGHTS COMPLAINT
IDOC, et al., )   pursuant to 28 U.S.C. §1331 (Federal Prisoner)
_____ )   ☐ CIVIL COMPLAINT
_____ )   pursuant to the Federal Tort Claims Act,
*Defendant/Respondent(s)* )   28 U.S.C. §§1346, 2671-2680, or other law

Jury Trial Demand

## I.   JURISDICTION

**Plaintiff:** Jeffrey Blaney, B 80790

A.   Plaintiff's mailing address, register number, and present place of
confinement.   Menard Correctional Center
P.o. Box 1000
Menard, IL 62259

**Defendant #1:**

B.   Defendant _Salvador Godinez_ is employed as
           (a)       (Name of First Defendant)

_Director (Former)_
           (b)          (Position/Title)

with _Illinois Department of Corrections (IDOC)_
           (c)       (Employer's Name and Address)

_____

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?   ☒ Yes   ☐ No

If your answer is YES, briefly explain: Plaintiff's denial of
meaningful access to the courts CLAIM has accrued and been ongoing since 1997 causing Plaintiff to a priori be impeded and frustrated from inception from being conferred with the capability to fully and fairly investigate, research, preserve, prepare, file and defend his actual and contemplated meritorious CLAIMS concerning the
(Continued on back)

(Rev. 7/2010)                              1

Defendant #1

(continued from page 1)

harsh conditions of confinement, regarding denial of
meaningful access to the courts, and pertaining to
challenges to his convictions and sentences before the
appropriate courts, in a procedurally correct manner, and
within the statute of limitations.

**Defendant #2:**

C.   Defendant ___John Baldwin___ is employed as

(Name of Second Defendant)

___Director (Acting)___

(Position/Title)

with ___Illinois Department of Corrections (IDoc)___

(Employer's Name and Address)

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?   ☒ Yes   ☐ No

If you answer is YES, briefly explain:   Same as Defendant #1, B. above, which is adopted and incorporated herein by reference with the same force and effect as if more particularly set forth herein.

**Additional Defendant(s) (if any):**

D.   Using the outline set forth above, identify any additional Defendant(s).

Salvador Godinez, Donald Stolworthy, Gladyse Taylor, Michael Randle, Ty Bates, Henry Bayer, Kimberly Butler, Rick Harrington, Michael Atchison, Shannis Stock, Alex Jones, Todd Brooks, Anthony Williams, Jacqueline A. Lashbrook, Doug Lyerla, William Rees, Brad Thomas, Tony Ferranto, Kevin Hirsh, Richard Paulter, James R. Brown, Joseph Cowan, Chad E. Hasemeyer, Page, Richard Moore, Paul Olson, Brian Thomas, Bill Westfall, Robert Dildan, Eovaldi, Robert Hughs, Raymond Allen, Jay Ziegler, James Best, Lt. Whitely, Clint Mayer, Kent Brookman, Michael Samuel, Torville, William Qualls, James A. Hoppersted, Fricky, Roger Shurtz, Joshua Berne, Daniel Dunn, Harris, Anthony Wills, Simmons, McDaniels, Spiller, Donald Lindenberg, Virgil Smith, Karuse, Rebecca Creason, Dr. Baig, Greathouse, Whiteside, Dr. Hillerman, Delong, Dr. Kewllkowsk, Sgt. Grace, Sgt. McClure, Gail Walls, Tonya Knust, Brad Bramlet, New, Shane Gregson, Jennifer Clendenin, Morgan Tees, Dia Rodley, Kellie S. Ellis, Rodney Roy, LaFone, Clara Draves, Vergil Smith, Susan Hill, Mark Phonix, J. Cowan, K. Allsup, Betsy Spiller, Jeannette Cowan, Lori Oakley, Linda Carter, Marvin Bochantin, Kelly Pierce, Sherry Benton, Terri Anderson, Sara Johnson, Jami Welborn, Hurst, Rakers, McNew, M. Pfange, Brinkley, Simpson, Obucina, Fischer, B. Smith, Jeff Hutchinson, Bruce Rauner, Michael Monjie, J. Whitley, Ellis, John and Jane Does, et al.

(Continued on back)

(Rev. 7/2010)                    3

Additional Defendants'

(continued from page 2)

The Defendants' were employed by the Illinois Department of Corrections (IDOC) at the time of Plaintiff's denial of meaningful access to the courts CLAIM. Plaintiff's denial of meaningful access to the courts CLAIM has accrued and been ongoing since 1997 causing Plaintiff to a priori be impeded and frustrated from inception from being conferred with the capability to fully and fairly investigate, research, preserve, prepare, file and defend his actual and contemplated meritorious CLAIMS concerning the harsh conditions of confinement, regarding denial of meaningful access to the courts, and pertaining to challenges to his convictions and sentences before the appropriate courts, in a procedurally correct manner, and within the statute of limitations. Plaintiff claims that since 1997 the Defendants', in conspiracy to impede, obstruct and interfere with prisoners (including Plaintiff's) right to meaningfully access the courts, have conspicuously and systematically impeded and frustrated Plaintiff's actual and contemplated meritorious CLAIMS concerning the harsh conditions of confinement at Menard Correctional Center, regarding denial of meaningful access to the courts, and pertaining to challenges to his (Plaintiff's) convictions and sentences before the appropriate courts, in a procedurally correct manner, and within the statute of limitations by flagrantly and unreasonably interfering with Plaintiff's right to meaningfully access the courts, and by intentionally and unreasonably not conferring upon the prisoners (including Plaintiff) the capability and wherewithal to fully and fairly investigate, research, preserve, prepare, file and defend actual and contemplated meritorious CLAIMS and challenges to convictions, sentences and conditions of confinement before the courts. Other Defendants' to be named at a later date are the Governors for the State of Illinois and the Commonwealth of Virginia, various prosecuting attorneys for the City of Virginia Beach, Virginia, as well as the City of Virginia Beach, Virginia, under diversity of citizenship for the Virginia Defendants.

4

## II.    PREVIOUS LAWSUITS

A.    Have you begun any other lawsuits in state or federal court relating to your imprisonment?                    ☒ Yes        ☐ No

B.    If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  <u>Failure to comply with this provision may result in summary denial of your complaint</u>.

1.    Parties to previous lawsuits:
Plaintiff(s): Jeffrey Blaney, et al.

Defendant(s): Do not have access to requested and needed personal excess legal research materials to answer this. See page 4, paragraph 4 of Plaintiffs 11-2-17 Motion For Extension of Time.

2.    Court (if federal court, name of the district; if state court, name of the county): Federal, Eastern District of Virginia

3.    Docket number: Same as number 1., above, under "Defendant(s)"

4.    Name of Judge to whom case was assigned: Same as number 1., above, under "Defendant(s)"

5.    Type of case (for example: Was it a habeas corpus or civil rights action?): civil rights complaint; Deliberate indifference to serious medical needs by knowing exposure to active infectious tuberculosis prisoners.

6.    Disposition of case (for example: Was the case dismissed?  Was it appealed?  Is it still pending?): Dismissed Plaintiff Blaney, but certified as a class and appointed counsel.

7.    Approximate date of filing lawsuit: 1994

8.    Approximate date of disposition: 1995

( Continued on back)

II. Previous Lawsuits (continued)

B. During the time of events relevant to this lawsuit, Plaintiff began other lawsuits in Virginia, and a post-conviction petition in Illinois; however, because of the facts surrounding his denial of meaningful access to the courts claim hereinbelow, those other lawsuits (civil rights actions, habeas corpus and post-convictions) were impeded and frustrated from inception from being enabled to be fully and fairly preserved, prepared, presented, defended and exhausted before the appropriate courts, with the requisite degree of specificity, and in a procedurally correct manner as allowed and required by law. Moreover, because Plaintiff does not have adequate access to his requested and needed personal excess legal research materials (which are being held by Defendants) Plaintiff is unable at this time to set forth the particulars of his other lawsuits (civil rights actions, habeas corpus petitions, and post-conviction petition) with more description than is set forth below:

Blaney v. Driscoll, et al., Case No. _____, Federal, Eastern District of Virginia, Civil Rights Complaint, filed approximately 2000; claims were regarding harsh conditions of confinement and denial of meaningful access to the courts. Disposition in favor of Defendants (believed to be upon summary judgment), 2002?

Blaney v. City of Virginia Beach, Case No. _____, Federal, Eastern District of Virginia, Civil Rights Complaint, filed approximately 2001; claims were regarding denial of meaningful access to the courts and harsh conditions of confinement. Disposition in favor of Defendants (believed to be upon summary judgment), 2003?

Blaney v. _____, Case No. _____, Virginia Beach Circuit Court, Habeas Corpus, filed approximately 2001; claims were regarding his Virginia Beach, Virginia, convictions and sentences, and concerning the denial of his right to file his direct appeal to the Virginia Court of Appeals from his convictions and sentences. Plaintiff was compelled to investigate, research, prepare, file and defend this action without access to his requested and needed court records and transcripts from his jury trial and sentencing hearings, and without adequate access to requested Virginia laws. Dismissed 2004?

Blaney v. _____, Case No. _____, Virginia Beach Circuit Court, Habeas Corpus, filed approximately

6

II. Previous Lawsuits (Continued)

2001; Claims were regarding his Virginia Beach, Virginia, convictions and sentences, and concerning the denial of his right to file his direct appeal claims concerning ineffective assistance of counsel (with counsel being appointed to investigate, research prepare, file and defend these direct appeal claims) at trial, including failure to appoint counsel to note and perfect plaintiff's direct appeal. Plaintiff was compelled to investigate, research, prepare, file and defend this action without access to his requested and needed court records and transcripts from his jury trial and sentencing hearing, and without adequate access to requested Virginia laws. Dismissed 2004?

Blaney v. _____, Case No. _____. federal, Eastern District of Virginia, Habeas Corpus, Filed approximately 2004; Claims were regarding his convictions and sentences in the Virginia Beach Circuit Court Virginia, and concerning the denial of his right to have his first level direct appeal filed. Dismissal for failure to exhaust, 2005?

Blaney v. _____, Case No. _____. federal, Eastern District of Virginia, Habeas Corpus, filed approximately 2004; claims were regarding his convictions and sentences in Virginia Beach, Virginia, and concerning the denial of his right to have his first level direct appeal concerning ineffective assistance of trial counsel fully and fairly investigated, researched, prepared, filed and defended with the appointment of counsel being afforded.

Blaney v. Illinois, Case No. _____, White County Circuit Court, Illinois, Post-Conviction petition, filed approximately 2000; Claims were regarding his convictions and sentence in the White County Circuit Court, Illinois. Disposition is still pending, thus, plaintiff cannot proceed to a higher court.

III.    **GRIEVANCE PROCEDURE**

A.    Is there a prisoner grievance procedure in the institution? ☒ Yes    ☐ No

B.    Did you present the facts relating to your complaint in the prisoner grievance procedure?    ☒ Yes    ☐ No

C.    If your answer is YES,
   1.    What steps did you take? Plaintiff submitted multiple Offender's Grievance forms in compliance with the Illinois Department of Corrections rules, regulations and procedures, as well as in compliance with the PLRA for his denial of access to the court claim, and resultive injuries.

   2.    What was the result? Whenever the Defendants' bothered to respond to Plaintiff's Offender's Grievances, they ignored the facts and misapplied the law. Mostly, the Defendents' chose to make the Offender's Grievance procedure effectively unavailable to Plaintiff by refusing to respond to submitted Offender's Grievances' from Plaintiff, by claiming they never received Plaintiff's submitted Offender's Grievances, by not making the Offender's Grievance forms adequately available, and by denying Plaintiff the wherewithal to secure copies of his submitted Offender's Grievances and/or stealing, loosing, or destroying sole copies of his Offenders Grievances.

~~D.    If your answer is NO, explain why not.~~

E.    If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?    ☐ Yes    ☐ No

F.    If your answer is YES,
   1.    What steps did you take?



   2.    What was the result?



G.    If your answer is NO, explain why not.



H.    Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not:
   Plaintiff cannot attach copies of his request for an administrative remedy or any responses he has received because the prison will not provide plaintiff with adequate access to his personal excess legal storage records (including his submitted Offender's Grievances and responses relevant to this complaint). Moreover, as to Plaintiff's submitted
   ( Continued on back)

(Rev. 7/2010)                                        8

III. Grievance Procedure (Continued)

offender's Grievance which the prison staff failed to respond to, lost, stole or destroyed, as to those facts, issues and claims in those submitted offender's Grievances', the administrative remedy has been effectively made unavailable to plaintiff for purpose of exhaustion. Finally, the Defendants' have consistently engaged in a pattern and practice of depriving plaintiff adequate access to requested and needed offender's Grievance forms necessary to confer upon plaintiff the wherewithal to utilize the administrative remedy for purpose of exhaustion in the first place, as well as a practice and policy of not offering a receipt system (or even allowing prisoners to secure a photo copy of grievances submitted for response) to enable plaintiff to evidence he turned in his grievances for proper response, and in time.

## IV.   STATEMENT OF CLAIM

A.   State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated.  Do not include legal arguments of citations.  If you wish to present legal arguments or citations, file a separate memorandum of law.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

Plaintiff, Jeffrey Blaney, pro se, is a state of Illinois prisoner, housed at Menard Correctional Center, Illinois Department of Corrections (IDOC) since 1997, and hereby complains against the Defendants' as follows:

1. This is a Civil Rights complaint brought pursuant to 42 U.S.C. Sections 1983, 1985 and 1986 seeking to redress violations of Plaintiff's United States constitutional rights under the First and Fourteenth Amendments, Article IV Section 1 of the Full Faith and Credit Clause, Article IV section 2 of the Privileges and Immunities clause, and Article VI of the Supremacy clause, all of the United States Constitution based upon the intentional flagrant ongoing systematic pattern and practice of methodically denying plaintiff meaningful access to the courts; and to redress violations of his liberty interest under the Due Process clause of the Fourteenth Amendment of the United States Constitution, the Constitution of Illinois, Article 1, Sections 2, 4, 5, 9 and 12, 730 ILCS Sections 5/3-2-2 (1) (d) and (h), 5/3-7-2 (a), 5/3-8-8 (a) and (c), 5/3-8-9 (Interstate Agreement on Detainers Act), and 20 Ill. Adm. Code 504 Offender Grievance Procedure, also based upon the intentional flagrant ongoing systematic pattern and practice of methodically denying, impeding and frustrating Plaintiff's meaningful access to the courts.

2. Plaintiff seeks a judgment declaring the Defendants' conduct unconstitutional and violative of Plaintiff's liberty interest as well as the terms and provisions of the congressionally sanctioned Interstate Agreement on Detainers Act, and an injunction against the Defendants' unlawful conduct as set forth below.

( Continued on back )

(Rev. 7/2010)                                              10

IV.  Statement of Claim  (Continued)

3.  At Menard Correctional Center, it is the Defendants' common practice, procedure and custom to deny, obstruct or interfere with prisoners (including Plaintiffs) constitutional right of meaningful access to the courts by intentionally denying and frustrating prisoners (including indigent Plaintiff's) reasonable and necessary access to an adequate law library, by the confiscation, destruction and withholding of prisoners (including Plaintiff's) legal work product, legal papers, legal books and other legal research materials, and by depriving indigents (including Plaintiff) the necessary paper and pen to draft legal documents. Plaintiff has been indigent over 15 years.

4.  The Defendants' at the law library (Menard Correctional Center), and those Defendants' who are ultimately responsible for the law library and its Defendants', do systematically, conspicuously and intentionally engage in or otherwise tacitly enforce or support unconstitutional archaic patterns, practices, policies and customs which are inherently designed to or have the injurious effect of denying or frustrating prisoners (including Plaintiff's) right of meaningful access to the courts. The Defendants' refuse to provide Plaintiff with adequate access to the needed legal research materials necessary to confer upon him the capability to challenge in the appropriate courts the violations of his rights concerning his convictions, sentences and harsh conditions of confinement. Whenever Plaintiff has been allowed to visit the law library at Menard Correctional Center, his adequate access to legal research materials was unreasonably impinged upon without any legitimate penological justification which did not encourage, foster and condone the official evisceration of Plaintiff's right of meaningful access to the courts. Actual usable time in the law library is approximately 40 - 50 minutes per visit. A prisoner (including Plaintiff) may only get to visit the law library one (1) time per month; unless he has proof of a court ordered or statutory deadline, he is then afforded one (1) visit per week to the law library. Once in the law library the prisoners (approximately 35-50 in numbers) (including Plaintiff) are required to remain seated in an small assigned seat while 3 or 4 inmate runners fetch specifically requested legal authority from the book shelves or the computer printer. If a prisoner (including Plaintiff) does not know the exact cite of what authority he will or may need, he will not know what to request thus, he will not receive what he cannot request. Whenever the inmate runner law clerks

IV. Statement of Claim (Continued)

are asked by a prisoner (including Plaintiff) for assistance in helping to locate needed legal research materials which prisoners (including Plaintiff) do not have the exact cite for, the inmate runner law clerks invariably do not have time to do the necessary legal research required to locate legal authority not exactly cited and written down on a Library Request Form.

5. Mr. Blaney's numerous grievances complaining about the exact cite inmate runner paging system as denying and frustrating his meaningful access to the courts, causing him injuries to his actual and contemplated claims regarding his convictions, sentences and harsh conditions of confinement were either disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants. Approximately three grievances filed per year since 2008.

6. Mr. Blaney's numerous grievances complaining about the inadequate time in the law library as denying and frustrating his meaningful access to the courts, causing him injuries to his actual and contemplated claims regarding his convictions, sentences and harsh conditions of confinement were either disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants. Here, whenever Mr. Blaney was able to locate legal research material possibly helpful or actually helpful to his actual and contemplated challenges to or claims concerning his convictions, sentences and harsh conditions of confinement, due to the inadequate time allowed in the law library, Plaintiff could not adequately read the legal research materials necessary to confer upon him the capability to preserve, investigate, research, prepare, file and defend his actual and contemplated meritorious challenges to his convictions, sentences and harsh conditions of confinement in a full and fair manner as allowed and required by law. Approximately three grievances filed per year since 2002.

7. The Defendants' intentionally eviscerate, hamper and obstruct Plaintiff's right, his need and his ability to adequately access the prisons legal research materials by enforcing a discriminatory policy and practice of withholding adequate access to requested and needed legal

<u>IV.</u>    Statement of Claim    (Continued)

research materials simply because Plaintiff, Blaney, cannot afford to purchase those requested and needed legal research materials. These same requested and needed legal research materials, and adequate access to same, are made available to more affluent prisoners who can afford to be charged for adequate access to the prisons law library research materials, all the while making those requested and needed legal research materials not adequately available to Mr. Blaney because he is indigent.

8. Mr. Blaney's numerous grievances complaining about being denied adequate access to the prisons law library, by the Defendants' not providing him adequate access to requested and needed legal research materials simply because he could not afford to purchase that adequate access, where Plaintiff alleged discrimination and actual injury to his actual and contemplated claims regarding his convictions, sentences and conditions of confinement, they were either disregarded, ignored, lost, stolen, destroyed or not properly addressed or resolved by the Defendants'. Here, whenever Mr. Blaney was able to locate legal research material possibly helpful or actually needed to confer upon him the capability to preserve, investigate, research, prepare, file and defend his actual and contemplated meritorious challenges to his convictions, sentences and conditions of confinement before the jurisdictionally correct court, within the statute of limitations, and in a full and fair manner, Plaintiff was not afforded adequate time in the law library (actual usable time approximately 35-40 hours per year, at approximately 40-60 minute weekly, monthly or bimonthly intervals) needed to digest the materials, and, because of his indigency, he was not financially able to purchase those requested and needed legal research materials in a form and manner consistent with his constitutional right of meaningful access to the courts.

13

IV. Statement of Claim (Continued)

9. Plaintiff has also had his adequate access to the law library research materials unconstitutionally and unreasonably restricted, impinged upon and interfered with over the last 20 years (since 1997) by the Defendants' use and abuse of a terroristical self-serving lockdown policy for reasons not penelogically justified. The Defendants', in conspiracy, conspired to use and did unreasonably use, over the last 20 years, for approximately (on average) 163 days out of each year, since 1997, they did use a barbaric lockdown policy, where the entire prison is on lockdown, for relatively minor events in one of Menards seven (7) cell houses to justify a lockdown in all of Menards cell houses. The administrative Defendants' at Menard used lockdown status for financial gain (where the prison confiscated or withheld prisoners state stipend, without any due process, for time periods prisoners where on lockdown), as a mechanism to overcome funding shortages experienced by the State of Illinois, as a mechanism to permit staff to take holidays at certain particular popular times of the year (holidays and hunting seasons), and as a mechanism to address corrections officer union actions that restrict officer availability. None of these uses - especially allowing guards leisurely holidays and hunting season - is penelogically justified. The uses of these lockdowns has caused Plaintiff to have his meaningful access to the courts further impeded and frustrated by unreasonably obstructing his adequate access to requested and needed legal research materials, thus causing him to suffer actual injuries to his nonfrivolous actual and contemplated challenges to his convictions, sentences and conditions of confinement, as well as to suffer immediate and irreparable injury, including psychological, physical and emotional injury for the lengthy lockdowns when Plaintiff was forced to lay dormant in a small two (2) man cell without adequate opportunity being afforded for outdoor exercise. Since 1997, these uses of lockdowns, without any legitimate penelogical justification, also interfered with Plaintiff's adequate access to his own personal excess legal storage materials as requested and needed to confer upon Plaintiff the ability to challenge his convictions, sentences and conditions of confinement before the courts in a full, fair and meaningful manner. For the reasons and facts set forth herein, until discovery, Plaintiff is not conferred with the capability to provide the exact dates, duration or reason for each lockdown with more specificity.

IV.   Statement of Claim (Continued)

10.  The property room Defendants', and those ultimately responsible for the policies, practices and procedures concerning the administration and safeguarding of the personal property under their control, do systematically enforce and support unconstitutional patterns, practices, policies, customs and acts which are inherently designed to or have the injurious ongoing effect of denying, impeding and frustrating prisoners (including Plaintiff's) constitutional right of meaningful access to the courts. The Defendants' have a practice and policy of requiring prisoners (including Plaintiff) to store their excess legal storage materials in boxes in a building which holds and handles prisoners excess legal materials. This Plaintiff's personal excess legal storage materials consist of irreplaceable intellectual work product and property, legal research, legal research materials, law books, legal documents and other irreplaceable legal records.¹ The property room Defendants' systematically rummage through, displace, disshelve, destroy, loose and steal Plaintiff's excess legal storage materials, all without Plaintiff being present, and without giving Plaintiff notice, a reason or a receipt. The Defendants' fail to properly protect and safeguard Plaintiff's excess legal storage materials, often allowing other prisoners access (unsupervised or otherwise) to Plaintiff's excess legal storage boxes. The Defendants' fail or refuse to provide Plaintiff with adequate access to his own excess legal storage materials as requested and needed. As a proximate result, Plaintiff has been impeded and frustrated from inception from being conferred with the capability to preserve evidence, and investigate, research, prepare, file, exhaust and defend his actual and contemplated nonfrivolous claims challenging his convictions, sentences and conditions of confinement in a full, fair, and meaningful manner consistent with his constitutional right of meaningful access to the courts, including this Complaint.

11.  Mr. Blaney's numerous grievances complaining about the unreasonable use of lockdowns, and how they were interfering with his adequate access to requested and needed legal research materials from the law library, how they were obstructing his adequate access to his requested and needed

¹ Including irreplaceable evidence needed to support this Complaint and injuries.

## IX.   Statement of Claim   (Continued)

excess legal research materials, and how they were, consequently, impeding and frustrating his meaningful access to the courts, causing him actual injury to his actual and contemplated claims regarding his convictions, sentences and conditions of confinement, they were either disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants. Approximately three grievances were filed per year since 2002.

12. Plaintiff has had his meaningful access to the courts further impeded and frustrated by the Defendants' systematic barbaric practice and custom of using the IDOC tactical response search team, who searched Plaintiff's cell, and other IDOC employees, who searched Plaintiff's cell, with the injurious purpose and result of terroristically dishelving, destroying, throwing away or stealing Plaintiff's irreplaceable intellectual work products, evidence, properties, legal research materials, legal research, law books, legal documents and other irreplaceable legal records. This systematic barbaric practice, pattern and custom caused Plaintiff's irreplaceable intellectual work products, evidence properties, legal research materials, legal research, law books, legal documents and other irreplaceable legal records unreasonably and injuriously dishelved, destroyed, thrown away or stolen, all without any legitimate penelogical justification and causing Plaintiff injury. As a proximate result, Plaintiff has been impeded and frustrated from inception from being conferred with the capability to preserve evidence, investigate, research, prepare, file, exhaust and defend his actual and contemplated nonfrivolous claims challenging his convictions, sentences and conditions of confinement in a full, fair and meaningful manner consistent with his constitutional right of meaningful access to the courts, including this complaint.

13.    Mr. Blaneys numerous grievances complaining about the Defendants' failure to provide Plaintiff with adequate access to his requested and needed excess legal storage materials, their failure to adequately protect and safeguard

16

IX.    Statement of Claim (Continued)

Plaintiff's excess legal storage properties, and their terroristical rummaging through, displacing, dishelving, destroying evidence, and loosing and stealing Plaintiff's excess legal storage properties, all without any legal penalogical justifiable reason, and how these practices, procedures, customs and acts were interfering with his adequate access to requested and needed legal research, legal research materials, legal work product, law books, legal documents and other evidence and irreplaceable legal records, how they were obstructing, impeding and frustrating his meaningful access to the courts, consequently causing him actual injury to his actual and contemplated claims regarding his convictions, sentences and conditions of confinement, they were either disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants'. Approximately three grievances were filed per year since 2007.

14. Mr. Blaney's numerous grievances complaining about the Defendants' barbaric practice, custom and acts of terroristically dishelving, destroying, throwing away and stealing Plaintiff's irreplaceable intellectual work products (over 1,000 pages of manuscript for a book written by hand on toilet paper, the back of case laws, and scrap paper, as well as a 60 page business plan) and properties, legal research materials, legal research, evidence, law books, legal documents and other irreplaceable legal records during cell searches (at one time, Plaintiff was having his cell searched every 5-7 days for years on end; one time he was searched 5 times in one week. These terroristical excessive cell searches were all without any legitimate penalogical interest or reason), how these systematic barbaric practices, customs and acts were obstructing, impeding and frustrating his meaningful access to the courts, consequently causing him actual injury to his actual and contemplated claims regarding his convictions, sentences and conditions of confinement, and how they abridged Plaintiff's freedom of expression, freedom of speech and freedom of religion rights, they were either disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants'. Approximately three grievances were filed per year since 2007.

## IV.    Statement of claim (Continued)

15. Plaintiff has had his meaningful access to the courts additionally impeded and frustrated by the Defendants' draconian policy, practice, procedure and custom of not providing indigent prisoners (including this Plaintiff) with adequate access to requested and needed paper and pen required to confer upon prisoners (including Plaintiff) the capability of drafting, creating, preserving, researching, preparing, filing and defending their (including Plaintiff's) actual and contemplated challenges to his convictions, sentences and conditions of confinement in a full, fair, meaningful and equal manner consistent with Plaintiff's right of meaningful access to the courts. Plaintiff has been indigent for over 15 years. A major part of the reason Plaintiff is indigent is because he has been compelled to pay (where he was charged by the Defendants) for adequate access to legal research materials which were otherwise withheld from adequate access until Plaintiff paid for same. Pursuant to the Defendants' archaic draconian practice, policy, procedure and custom, indigent prisoners (including Plaintiff for the last 15 years) are limited to receiving ten (10) pieces of paper per month, one (1) flex pen (now, as of 2017, two (2) flex pens), and two (2) manilla envelopes per month. No exceptions were afforded Plaintiff. There is no legitimate penelogical justification for not providing Plaintiff (as an indigent) with adequate access to requested and needed paper and pen. As a proximate result of not being provided with adequate access to necessary writing tools, Plaintiff has been impeded and frustrated from inception from being conferred with the capability to conduct meaningful legal research, and preparing, filing and defending his actual and contemplated nonfrivolous claims, challenging his convictions, sentences and conditions of confinement in a full, fair and meaningful manner consistent with his constitutional right of meaningful access to the courts, including this complaint.

16. Mr. Blaney's numerous grievances complaining about the Defendants' draconian policy, practice, procedure and custom of not providing Plaintiff with adequate access to requested and needed paper and pens, all without any legitimate penelogical justification, and how those draconian practices, policies, procedures and customs were interfering with and

18

## IV.    Statement of Claim (Continued)

not conferring Plaintiff the capability to conduct meaningful legal research, and to prepare, file and defend his actual and contemplated nonfrivolous claims challenging his convictions, sentences and conditions of confinement in a full, fair, meaningful and equal manner consistent with his constitutional right of meaningful access to the courts, they were all either disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants'. Approximately three grievances were filed per year since 2007.

17. Pursuant to a 1997 conviction by the White County Circuit Court (Jury), Case No. _____, Plaintiff is serving a forty-five year term of imprisonment at Menard. Plaintiff did file, in approximately 2000, in the White County Circuit Court, Illinois, Case No. _____, his post-conviction petition challenging his White County Circuit Court, Illinois, 1997 conviction and sentence. Plaintiff's post-conviction petition has been laying desuetude stagnating in the White County Circuit Court, because Plaintiff has not been conferred with the capability to realize how to compel that court to afford him a ruling on his post-conviction petition. For the reasons set forth above, Plaintiff has been impeded and frustrated from being conferred with the capability of discovering and realizing how to meaningfully advance and exhaust his post-conviction claims in a full, fair, meaningful and equal manner for purpose of state appellate review, and for purpose of eventual Federal Habeas Corpus (28 USC. § 2254) review. Plaintiff wanted to but has not been conferred with the capability to exhaust his State post-conviction remedies for purpose of later State appellate review, and for later Federal Habeas Corpus review, thus impeding and frustrating from inception Plaintiff's right to full, fair, meaningful and equal access to state appellate and Federal Habeas courts, thus, denial of meaningful access to the courts. For the reasons and facts set forth herein, until discovery, Plaintiff is not conferred with the capability to provide case numbers and other facts with more specificity.

IV.    Statement of Claim (Continued)

18. Plaintiff was received at Menard Correctional Center in 1997. Menard is a prison in Southern Illinois housing maximum security prisoners. It houses high agression, high security, extremely high security and disciplinary prisoners. Plaintiff was informed by the Defendants at Menard that he had outstanding untried charges in favor of Virginia Beach, Virginia for non violent offenses related to property. Menard recognized these outstanding charges as detainers. Menard used the mere fact of these untried Virginia charges against Plaintiff in a way adverse and punitive to Plaintiff's interest. Plaintiff was told by the Menard Defendants' that unless or until Plaintiff resolved the untried Virginia charges, he would not be eligible for transfer to a lower security prison, he would never be eligible for job consideration, and his security classification would be increased (as it was). the Defendants' at Menard represented to Plaintiff that, under the terms and provisions of the Interstate Agreement on Detainers Act, they would cause or afford Mr. Blaney an opportunity to be forwarded to Virginia Beach, Virginia to resolve the untried Virginia Beach, Virginia charges. the Defendants' (including the Virginia Defendants', Virginia Beach prosecutors') represented and misrepresented to Plaintiff, and in writing, that if Plaintiff signed the IADA forms as drafted, presented and signed by the Menard Defendants' Plaintiff would be entitled to have the charges dismissed if the Virginia Beach prosecuting attorney did not have him tried within 180 days, provided that for good cause shown in open court, the Plaintiff and his counsel being present, the Virginia Beach Circuit Court granted any necessary or reasonable continuances. the Defendants' also represented and agreed that Plaintiff would not be waiving or forfeiting any of his prexisting rights, including his right to counsel, and his right to appeal if convicted. Under these false pretenses, where the Defendants' erroneously represented to Plaintiff (and in writing) the terms, provisions and protections of the IADA as agreed upon, and under the duress of being subjected to continued adverse and punitive treatment at Menard for the next 45 years

20

IV.  Statement of Claim (Continued)

because of the detainer based on the untried Virginia charges, Plaintiff agreed to sign and did sign the IADA form contract believing he was entitled to its rights, terms and protections as agreed upon in the contract. Plaintiff was transferred to Virginia Beach, Virginia in or around 1998 to resolve the outstanding charges. Approximately 1999, after violating the terms, conditions and rights of the IADA contract between the Defendants' (Virginia Beach, Virginia Prosecutors), the Illinois Defendants, and between this Plaintiff, after two (2) separate jury trials (Commonwealth v Blaney, Virginia Beach, Virginia, Circuit Court Case No. _____, and Commonwealth v Blaney, Virginia Beach Virginia, Circuit Court Case No. _____) Plaintiff was convicted and sentenced to a total of 79 years of imprisonment to the Virginia Department of Corrections, consecutive to his Illinois prison sentence. Thereafter, also after violating the terms, provisions, rights and protections of the IADA, Plaintiff was denied his actual, and effective first level appeal rights, and his right to the appointment of counsel for his actual and effective first level appeal as of right. A few weeks after Plaintiff was sentenced on each conviction, approximately 1999, Plaintiff was returned to Menard. These Virginia Beach, Virginia convictions and sentences were lodged against Plaintiff as a detainer, where they have remained, with all of the accompanying adverse prejudicial effects, injuries and consequences to Plaintiff's IADA rights, constitutional rights and state created rights and interest. For the reasons and facts stated above, and because Plaintiff has also never been conferred with the capability to secure access to his requested and needed Virginia Beach Circuit Court records, transcripts and other discoverable evidence from either of his two (2) above cases in Virginia Beach, Virginia, Plaintiff has been impeded and frustrated from inception from being conferred with the capability to adequately preserve, research, investigate, prepare, file and defend his actual and contemplated challenges to his Virginia Beach, Virginia convictions and sentences before the appropriate courts, within the statute of limitations, in a procedurally correct manner, with the requisite degree of specificity and evidence, and in a full, fair, meaningful

21

IV.   Statement of Claim (Continued)

and equal manner consistent with the terms, provisions, rights and protections of the IADA, and consistent with Plaintiff's meaningful access to the courts rights. For the reasons and facts set forth above, until discovery, Plaintiff is not conferred with the capability to provide case numbers and other facts with more specificity.

19. Mr. Blaney's numerous grievances complaining about the Defendants' breach of contract as to the IADA terms, provisions, rights and protections, as to not being conferred with the capability to adequately preserve, research, investigate, prepare, file and defend his actual and contemplated challenges to his Virginia Beach, Virginia convictions and sentences as stated more fully above, and as to the Virginia Beach, Virginia detainers being used by Menard Defendants' having systematic, pervasive ongoing adverse prejudicial effects, punishment, injuries and consequences to Plaintiff's IADA terms, rights, guarantees and protections, to his constitutional rights, and to his state rights and interest, they were all either disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants.' Approximately one grievance has been filed per year since 2003.

20. As an indigent prisoner, Plaintiff cannot afford to purchase personal hygeine or clothes. For the time period Plaintiff has been indigent, over 15 years, he has been denied adequate hygeine and adequate clothing exchange. Plaintiff, as an indigent, is restricted to one small hotel size bar of soap, one 1.5 ounce tube of toothpaste, one 2 inch (approximately) toothbrush, ten single use size packages of shampoo, and one single use pop up deodrant (maybe 4 or 5 uses). Contrary to the policy of providing indigent prisoners with a fresh exchange of white clothes, towel and face cloth every 90-180 days, it is common practice and custom to ignore that policy in favor of limiting prisoners (including indigent Plaintiff) to one exchange every 2-4 years. These policies, practices, customs and acts have denied Plaintiff the minimal civilized measures of lifes necessities for almost 15 years. Plaintiff suffered numerous skin infections as a proximate result. He

22

IV.  Statement of Claim (Continued)

was eventually admitted into the prisons infirmary for his skin problem. Mr. Blaney's numerous grievances complaining about inadequate personal hygiene and clothing were all disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants. Approximately one grievance was filed per year since 2007

21. In or around 2014 Plaintiff was involved with his cell mate in a physical altercation. Prior to the altercation, Petitioner informed the gallery officer of the need to be separated from his cell mate before an altercation occurred as instigated by Plaintiff's cell mate. the John Doe Defendant gallery officer, and the John Doe Lieutenant Defendant told this Plaintiff, and his cell mate, that they (the prison security personnel) do not do cell moves unless or until the prisoners are fighting. Plaintiff and his cell mate got into an altercation. Plaintiff's cell mate attacked him, Plaintiff defended himself. Plaintiff received a broken left thumb, and was maced in the face. Plaintiff was thrown in segregation, without being treated for the mace, and without having his broken thumb documented. For approximately 2 days Plaintiff laid on the floor of his segregation cell. His cell was dangerously hot. It was 100° outside. Plaintiff had no fan, he was in a closed front cell with no air circulation. It was a 40 square-foot cell, with actual usable floor space less than 8 feet by 19" wide. Plaintiff could not lay on the cotton mattress as it smelled of urine and had blood stains on it. Plaintiff was taken to an outside hospital approximately 2 or 3 days after the altercation. the outside physician concluded Plaintiff needed pins in his left thumb. these pins were not provided; Plaintiff now has a permanently disfigured thumb with limited mobility. Mr. Blaney found an attorney out of chicago, Illinois, to file his contemplated civil rights complaint for failure to protect, cruel and unusual punishment, and deliberate indifference. Counsel was unable to prepare

23

IV.   Statement of Claim (Continued)

that contemplated civil rights complaint because Plaintiff could not adequately communicate with counsel due to his (plaintiff's) indigency not conferring upon him the capability to afford the paper and pen needed. Mr. Blaney's grievances' complaining of the Defendants' failure to protect, cruel and unusual punishment, and deliberate indifference to his health, safety, and serious medical needs were all disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants.

22. In or around 2012, the Defendants' started serving excessive amounts of soy based food as a substitute for and in place of meat based protein. Out of the 21 meals served per week, approximately 16 of those meals were packed with excessive amounts of soy protein. The soy was often not fully cooked. Upon information and belief the soy has not been properly processed. As a proximate result of this soy based diet, Plaintiff developed an allergen to soy. Around 2012, shortly after Plaintiff started eating the soy based diet, Plaintiff started having severe abdominal pains, spastic colon, constant acid reflux, constipation, hemorrhoids, fatigue, intolerance of cold temperatures, mental apathy, dimentia, physical sluggishness, muscle aches, dry skin and hair, bleeding from dry skin, total loss of all hair below his waist, dangerously low blood pressure, coarsening of features and a general slowing of normal metabolic functioning, as well as developing myxedema and incurring a hiatal hernia. One of the doctors joked that Plaintiff's sex life was not good, and he would have to put Plaintiff on dialysis. This John Doe Defendant doctor made this observation around 2015 instead of diagnosing or adequately treating Plaintiff's serious medical needs as requested. Plaintiff was and still is told by the Defendants' that it is their practice and custom to only address or examine one medical problem, issue or need per visit to sick call, the nurse, the nurse practitioner, or the doctor. This practice and custom did and has continued to obstruct, delay and frustrate Plaintiff's right and need to be properly diagnosed and treated,

24

IX.    Statement of Claim (Continued)

and to document his request and need for medical treatment to be known so Plaintiff could be properly evaluated in a professional manner. Whenever Plaintiff has been afforded some slither of diagnosis, or some iota of indifferent myopic medical treatment concerning his serious medical health needs, the Defendants deliberately failed to diagnose or search for the underlying cause, and they failed to adequately treat or adequately follow through with prescribed treatment as needed. As of this writing Plaintiff's numerous grievances complaining about the soy based diet, its injurious effect to Plaintiff, the failure to adequately diagnose, the failure to adequately treat Plaintiff's serious medical health problems, and the unconstitutional practice and custom of only addressing or examining one medical problem, symptom, issue or need per visit, they were all either disregarded, ignored, lost, stolen, destroyed or not properly addressed by the Defendants. Plaintiff submitted over ten (10) grievances since the Defendants' started serving this predominantly soy based diet, all to no avail.

25

## CLAIM I

Violations of Rights Under the First and Fourteenth Amendments, Article IV Section 1 of the Full Faith and Credit Clause, Article IV Section 2 of the Privileges and Immunities Clause, Article VI of the Supremacy Clause, All of the United States Constitution, and the Interstate Agreement on Detainers Act, Based upon Denial of Meaningful Access to the Courts Under 42 U.S.C. Sections 1983, 1985, and 1986, 28 U.S.C. Section 1332 and 1367 for Declaratory and Injunctive Relief, and for Compensatory and Punitive Damages against the Defendants.

23. Plaintiff realleges and incorporates by reference paragraphs 1 - 22, above, with the same force and effect as if alleged more particularly herein.

24. Defendants', past and present Directors of the IDOC, for the time relevant hereto, had overall responsibility for the IDOC policies and procedures, and the administration of all facilities for the IDOC within the state, including a duty to adequately train and supervise IDOC employees.

25. Defendants', past and present, wardens of Menard Correctional Center, IDOC, for the time relevant hereto, had a responsibility for implementing policy and procedure and the administration of the Menard Correctional Center facility, including a duty to adequately train and supervise IDOC employees.

26. Defendants', past and present John and Jane Doe IDOC law library employees, for the time relevant hereto, had a responsibility for implementing policies and procedures to provide prisoners (including plaintiff) with adequate access to legal research materials or adequate assistance from persons trained in the law sufficient enough to confer upon prisoners (including plaintiff) the capability of meaningfully preserving, investigating, researching, preparing, filing, and, where necessary, defending actual and contemplated nonfrivolous challenges concerning convictions, sentences and harsh conditions of confinement in front of the jurisdictionally correct court, in a procedurally correct manner, within the statutes of limitations, and in a full, fair, meaningful and equal manner.

26

CLAIM I   (Continued)

27. Defendants', past and present John and Jane Doe IDOC law library employees, for the time relevant hereto, had a responsibility for implementing policies and procedures to provide indigent prisoners (including Plaintiff) with adequate access to paper and pen sufficient enough to confer upon the prisoners (including Plaintiff) the capability of meaningfully preserving, investigating, researching, preparing, filing and defending (where necessary) actual and contemplated nonfrivolous challenges concerning convictions, sentences and harsh conditions of confinement in front of the jurisdictionally correct court, in a procedurally correct manner, within the statutes of limitations, and in a full, fair, meaningful and equal manner.

28. Defendants', past and present John and Jane Doe IDOC personal property employees, for the time relevant hereto, had a responsibility for implementing policies and procedures to provide prisoners (including Plaintiff) with adequate access to their excess legal storage (which, in Plaintiff's case, includes legal research materials, legal documents and other legal records), and to safeguard same from tampering, destruction and theft sufficient enough to not interfere with access to the courts, and sufficient enough to confer upon the prisoners (including Plaintiff) the capability of meaningfully preserving, investigating, researching, preparing, filing and defending (where necessary) actual and contemplated nonfrivolous challenges concerning convictions, sentences, and harsh conditions of confinement in front of the jurisdictionally correct court, in a procedurally correct manner, within the statutes of limitations, and in a full, fair, meaningful and equal manner.

29. Defendants', past and present John and Jane Doe IDOC tactical response search team, and other IDOC employees who also search cells, for the time relevant hereto, had a responsibility to not interfere with prisoners (including Plaintiff's) right of meaningful access to the courts, by unreasonably dishelving and unlawfully tampering with, obstructing, destroying and stealing prisoners (including Plaintiff's) original intellectual properties, law books, legal research materials, legal documents and other legal records.

30. Defendants', past and present John and Jane Doe Defendants', for the time relevant hereto, had a responsibility to ensure that prisoners (including Plaintiff) were and are afforded the ability to fully and fairly access and exhaust the grievance procedure, including documenting the filing of all submitted grievances, from counselors' to Defendant IDOC Directors'.

27

CLAIM I   (Continued)

31. Defendants', past and present John and Jane Doe IDOC counselors, wardens and Directors, for the time relevant hereto, had a responsibility to investigate, respond to and, where enabled, resolve prisoners' (including Plaintiff's') grievances' submitted for resolution.

32. Defendants', past and present John and Jane Doe Virginia Beach, Virginia prosecutors, and the City of Virginia Beach, Virginia, as well as the past and present Defendants' IDOC Directors' and wardens for Menard Correctional Center, for the time relevant hereto, had a contractual duty to ensure that Mr. Blaney was entitled to the terms and protections of the congressionally sanctioned Interstate Agreement on Detainers Act (IADA) compact, as agreed upon in writing to Mr. Blaney, and also the responsibility to confer upon Plaintiff the capability to meaningfully enforce the terms and provisions of the IADA in front of the jurisdictionally correct court, in a procedurally correct manner, within the statutes of limitations, and in a full, fair, meaningful and equal manner consistent with Plaintiff's constitutional right of meaningful access to the courts.

33. Defendants', past and present John and Jane Doe Governors', Illinois and Virginia, are ultimately responsible for the enforcement of the terms and provisions of the IADA.

34. Defendants', past and present John and Jane Doe IDOC correctional officers', for the time relevant hereto, had a responsibility to cause Plaintiff's properly mailed grievances to Defendants counselors, wardens' and Directors, which were properly addressed and placed in Plaintiff's prison bars for mailing, to be mailed as addressed.

35. Defendants', past and present John and Jane Doe IDOC employees have, for the time relevant hereto, a responsibility to make grievance forms available to prisoners (including Plaintiff) as requested and needed.

36. Defendants' failed to meet their designated responsibilities, thus, impeding, frustrating and interfering with Plaintiff's meaningful access to the courts by implementing policies, practices actions, inactions and omissions causing Mr. Blaney to not be conferred with the capability of meaningfully preserving, investigating, researching, preparing, filing and defending (where necessary) actual and contemplated nonfrivolous challenges concerning

CLAIM I  (Continued)

convictions, sentences and harsh conditions of confinement in front of the jurisdictionally correct correct, in a procedurally correct manner, within the statutes of limitations, and in a full, fair, meaningful and equal manner.

37.  Defendants' policies, practices and customs are designed to intentionally impede, frustrate and interfere with prisoners (including Plaintiff's) right of meaningful access to the courts by failing to provide Plaintiff with requested and needed adequate access to legal research materials or adequate assistance from persons trained in the law.

38.  Defendants' policies, practices and customs are designed to intentionally impede, frustrate and interfere with indigent prisoners (including Plaintiff) right of meaningful access to the courts by failing to provide Plaintiff with requested and needed adequate access to paper and pen.

39.  Defendants' policies, practices and customs are designed and implemented to not confer upon the prisoners (including Mr. Blaney) the capability to adequately preserve, investigate, research, prepare, file and defend (where necessary) actual and contemplated nonfrivolous challenges concerning convictions, sentences and conditions of confinement in front of the jurisdictionally correct court, in a procedurally correct manner, with the requisite degree of specificity, within the statutes of limitations, and in a full, fair, meaningful and equal manner.

40.  Defendants' acts and omissions constitute denial of Mr. Blaney's right of adequate access to legal research materials or to adequate assistance from a person trained in the law in violation of Plaintiff's aforementioned constitutional rights, and in conspiracy to violate same.

41.  Defendants' acts and omissions constitute denial of Mr. Blaney's right of adequate access to paper and pen in violation of Plaintiff's aforementioned constitutional rights, and in conspiracy to violate same.

42.  Defendants' acts and omissions constitute denial of Mr. Blaney's right of adequate access to his own personal law books, legal research materials, legal research, intellectual properties, legal documents and other legal records in violation of Plaintiff's aforementioned constitutional rights, and in conspiracy to violate same.

29

CLAIM I (Continued),                    Actual Injuries COUNT I

43. Defendants' acts and omissions constitute denial of and interference with meaningful access to the courts by unreasonably disheveling and unlawfully tampering with, obstructing, destroying and stealing Mr. Blaney's original intellectual work product and properties, legal research materials, legal research, personal law books, legal documents and other legal records, in violation of Plaintiff's aforementioned constitutional rights, and in conspiracy to violate same.

44. Defendant's acts and omissions constitute denial of Plaintiff's right of meaningful access to the courts, in violation of Plaintiff's aforementioned constitutional rights, and in conspiracy to violate same.

45. Defendants' policies, practices, customs, acts and omissions impinged upon Plaintiff's constitutional, state statutory, and administrative rights and remedies with absolutely no legitimate penological justification or reason.

46. Defendants' policies, practices, customs, acts, and omissions place Plaintiff at unreasonable, continuing, and foreseeable risk of future injuries to his actual and contemplated claims concerning convictions, sentences and harsh conditions of confinement. Plaintiff has no plain, adequate and complete remedy at law to address the wrongs and injuries described herein. Plaintiff's impeded and frustrated claims challenging his convictions, sentences and conditions of confinement are nonfrivolous.

47. As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, omissions, and deliberate interference with court access, which were not and which are not reasonably related to any penological justification, Plaintiff has suffered and will continue to suffer immediate and irreparable injury, including physical, psychological and emotional injury, as well as actual injuries to his actual and contemplated nonfrivolous legal claims challenging his convictions, sentences and conditions of confinement, including herein.

Actual Injuries
COUNT I

( Continued on next page)

30

COUNT I, Actual Injuries (Continued)

Actual Injuries
COUNT I

Violation of the Full Faith and Credit Clause, Article IV Section 1, the Privileges and Immunities Clause, Article IV Section 2, the Supremacy Clause, Article VI, the First Amendment Petition Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses, All Under the Rights in the United States Constitution, Under 42 U.S.C Sections 1983, 1985 and 1986, Based Upon Denial of Meaningful Access to the Courts.

48. Plaintiff states, reiterates, realleges and incorporates by reference paragraphs ___1___ - ___47___ above, into this Count with the same force and effect as if alleged more particularly herein.

49. As a direct and proximate result of Defendants' aforementioned unconstitutional policies, practices, customs and acts in unreasonably and knowingly implementing and enforcing an ineffective exact cite inmate runner paging system, in not affording Plaintiff requested and needed adequate access to legal research materials, in not providing Plaintiff with adequate time in the law library as requested and needed, in not allowing indigent prisoners (including Plaintiff) to access requested and needed legal research materials outside of the law library to enable them to be afforded the time to read and digest the legal research materials (all the while making these same services available to similarly situated more affluent non-indigent prisoners), in limiting Plaintiff to ten (10) pieces of paper and one (1) (now (2)) flex pen per month, in denying Plaintiff adequate access to his own excess legal storage materials as requested and needed, in unreasonably disshelving and unlawfully tampering with, destroying and stealing Plaintiff's irreplaceable intellectual work product and property, legal research, legal research materials, law books, legal documents and legal records, and in failing to protect and safeguard Plaintiff's irreplaceable

COUNT II,      Actual Injuries     ( Continued )

legal documents and legal records from unreasonable, barbaric and terroristical dishelving, tampering, destruction and theft.

52. Defendants' failure to adequately train or supervise violates Plaintiff's constitutional rights.

53. As a direct and proximate result of Defendants' unconstitutional policies, practices, customs, acts, omissions, and deliberate interference, Plaintiff has been and, until Plaintiff is afforded discovery on this complaint, adequate access to requested and needed legal research materials, and adequate access to his own personal excess legal storage materials, Plaintiff will continue to be impeded and frustrated from inception from being conferred with the capability, to meaningfully set forth, state and evidence the facts of his claims and injuries, the identity of all of the Defendants' together with their duties, responsibilities, liabilities and connections to the claims and injuries, and all of the particular applicable legal rights violated (including jurisdiction) with more specificity as may be required by this Court, by the Prison Litigation Reform Act, by the Federal Rules of Civil Procedure, by the United States codes, and by other State and Federal Codes, Acts, statutes and laws. Plaintiff request leave to have the Court recognize those impeded and frustrated claims and injuries and order discovery for amendment.

Actual Injuries
COUNT II

Violation of the Full Faith and Credit Clause, Article IV Section 1, the Privileges and Immunities Clause, Article IV Section 2, the Supremacy Clause, Article VI, the First Amendment Petition Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses, All Under the Rights in The United States Constitution, Under 42 U.S.C. Sections 1983, 1985 and 1986, Based upon Denial of Meaningful Access to the Courts.

54. Plaintiff states, reiterates, realleges and incorporates by reference paragraphs 1 - 53, above, into this Count with the same force and effect as if alleged more particularly herein,

33

COUNT I, Actual Injuries (Continued)

intellectual work product and property, legal research, legal research materials, law books, legal documents and legal records from unreasonable disheloving, tampering, destruction and theft, Plaintiff sustained and will continue to sustain irreparable injury, including physical, psychological and emotional injury, as well as actual injuries where he has been impeded and frustrated from inception (for over 15 years as to some impeded and frustrated counts under CLAIM I herein) from being conferred with the capability of meaningfully preserving, evidencing, investigating, researching, preparing, filing, (including this complaint) and defending (where necessary) actual and contemplated nonfrivolous CLAIMS (See CLAIM I herein, counts thereunder) challenging his convictions, sentences and conditions of confinement before the jurisdictionally correct court, in a procedurally correct manner, within the statutes of limitations, with the requisite degree of specificity, and in a full, fair, meaningful and equal manner consistent with Plaintiff's rights of meaningful access to the courts. But for the Defendants' unconstitutional policies, practices, customs, acts, omissions, and deliberate interference, Plaintiff would have been enabled to timely file and he would have timely filed all of his heretofore referenced impeded and frustrated actual and contemplated nonfrivolous challenges to his convictions, sentences and conditions of confinement (see CLAIM I herein, counts thereunder) before the jurisdictionally correct court, in a procedurally correct manner, within the statutes of limitations, with the requisite degree of specificity, and in a full, fair, meaningful and equal manner constant with Plaintiff's rights of meaningful access to the courts.

50. Defendants' fail to adequately train or supervise individuals in their employ or under their control and supervision as to how to properly ensure, protect and safeguard Plaintiff's right of meaningful access to the courts from being obstructed, denied, impeded, frustrated and interfered with.

51. Defendants' fail to adequately train or supervise individuals in their employ or under their control and supervision as to how to properly ensure, protect and safeguard Plaintiff's irreplaceable intellectual work product and property, legal work, legal research materials, law books,

32

COUNT II, Actual Injuries (Continued)

55. As a direct and proximate result of the Defendants' aforementioned unconstitutional policies, practices, customs and acts in unreasonably and knowingly implementing and enforcing an ineffective exact cite inmate runner paging system, in not affording Plaintiff requested and needed adequate access to legal research materials, in not providing Plaintiff with adequate time in the law library as requested and needed, in not allowing indigent prisoners (including Plaintiff) to access requested and needed legal research materials outside of the law library to enable them to be afforded the time to read and digest the legal research materials (all the while making these same services available to similarly situated more affluent non-indigent prisoners), in limiting Plaintiff to ten (10) pieces of paper and one (1) (now two (2)) flex pens per month, in denying and interfering with Plaintiff's adequate access to his own excess legal storage materials as requested and needed, in unreasonably dishelving and unlawfully tampering with, destroying and stealing Plaintiff's irreplaceable intellectual work product and property, legal research, legal research materials, law books, legal documents and legal records, and in failing to protect and safeguard Plaintiff's irreplaceable intellectual work product and property, legal research, legal research materials, law books, legal documents (evidence) and legal records from unreasonable, barbaric and terroristical dishelving, tampering, destruction and theft, Plaintiff sustained and will continue to sustain irreparable injury, including physical, psychological and emotional injury, as well as actual injuries where he has been impeded and frustrated (for over 18 years) from being conferred with the capability of meaningfully preserving, defending and exhausting his State post-conviction claims (nonfrivolous) challenging his Illinois convictions and sentences (white county Circuit Court Case No. _____) in a full, fair, meaningful and equal manner for purpose of later State appellate and Federal Habeas (28 U.S.C. §2254) review as required and allowed by law. But for the Defendants' unconstitutional policies, practices, customs, acts, omissions, and deliberate interference, Plaintiff would have been enabled to and he would have compelled the white county Circuit Court, Case No. _____, to afford Plaintiff a ruling on the merits of his still pending now desuetude stagnant nonfrivolous State post-conviction petition (white county Circuit Court, Illinois, Case No. _____),

34

COUNT II,   Actual Injuries   (Continued)

thus conferring upon Plaintiff the procedural and jurisdictional wherewithal to appeal his state post-conviction petition to the state appellate court (which he would have filed if enabled) for purpose of exhaustion for later Federal Habeas Corpus (28 U.S.C. §2254) review, which Plaintiff also would have filed if enabled, if not impeded and frustrated.

56.   Defendants' fail to adequately train or supervise individuals in their employ or under their control and supervision as to how to properly ensure, protect and safeguard Plaintiff's right of meaningful access to the courts from being obstructed, denied, impeded, frustrated and interfered with.

57.   Defendants' fail to adequately train or supervise individuals in their employ or under their control and supervision as to how to properly ensure, protect and safeguard Plaintiff's irreplaceable intellectual work product and property, legal work, legal research materials, law books, legal documents and legal records from unreasonable, barbaric and terroristical dishelving, tampering, destruction and theft.

58.   Defendants' failure to adequately train or supervise violates Plaintiff's constitutional rights.

59.   As a direct and proximate result of Defendants' unconstitutional policies, practices, customs, acts, omissions, and deliberate interference, Plaintiff has been and will continue to be impeded and frustrated from being conferred with the capability of preserving, defending, and exhausting his state post-conviction claims (White County Circuit Court Case No. _____), from being conferred with the capability to compel a ruling on the merits of his still pending (over 18 years) now desuetude stagnant state post-conviction petition (White County Circuit Court Case No. _____), from being conferred with the capability to exhaust his state remedies for Federal Habeas Corpus review, and from being conferred with the capability to prepare and file his contemplated Federal Habeas Corpus petition in accordance with the 28 U.S.C §2254 procedural exhaustion requirements.

35

COUNT III,   Actual Injuries   (Continued)


Actual Injuries
COUNT III

Violation of the Full Faith and Credit Clause, Article IV Section 1, the Privileges and Immunities Clause, Article IV Section 2, the Supremacy Clause, Article VI, the First Amendment Petition Clause, the Fourteenth Amendment Due Process and Equal Protection Clauses, All of The United States Constitution, and the Interstate Agreement on Detainers Act, under 42 USC Sections 1983, 1985 and 1986, Based upon Denial of Meaningful Access to the Courts.


60. Plaintiff states, reiterates, realleges and incorporates by reference paragraphs ___1___ - _____, above, into this Count with the same force and effect as if alleged more particularly herein.

61. As a direct and proximate result of the Defendants' aforementioned unconstitutional policies, practices, customs and acts in unreasonably and knowingly implementing and enforcing an ineffective exact cite inmate runner paging system, in not affording Plaintiff adequate access to requested and needed legal research materials, in not providing Plaintiff with adequate time in the law library as requested and needed, in not allowing indigent prisoners (including Plaintiff) to access requested and needed legal research materials outside of the law library to enable them (including Plaintiff) to be afforded the necessary time to read and digest the legal research materials, in limiting Plaintiff to ten (10) pieces of paper and one (1) (now two (2)) flex pens per month, in denying and interfering with Plaintiff's adequate access to his own excess legal storage materials as requested and needed, in unreasonably disshelving and unlawfully tampering with, destroying and stealing Plaintiff's irreplaceable intellectual work product and property, evidence, legal research, legal research materials, law books, legal documents and legal records, and in failing to protect and safeguard Plaintiff's irreplaceable intellectual work product

36

COUNT III,  Actual Injuries  (Continued)


and property, legal research, evidence, legal research materials, law books, legal documents and legal records from unreasonable, barbaric and terroristical dishelving, tampering, destruction and theft, Plaintiff sustained and will continue to sustain irreparable injury, including physical, psychological and emotional injury, as well as actual injuries where he has been impeded and frustrated (for over 20 years as to some injuries) from being conferred with the capability of fully, fairly and meaningfully preserving, preparing and filing his contemplated nonfrivolous civil rights complaint in a procedurally correct manner, within the statutes of limitations, in the jurisdictionally correct court and with the requisite degree of specificity against the Illinois Defendants' for using the Virginia Beach, Virginia untried charges as detainers in a way adverse and punitive to Plaintiff's interest and due process rights, for using those Virginia Beach, Virginia untried charges as detainers), and the adverse and punitive treatment and results of those untried charges as a weapon or tool of compulsion to compel, under duress, Plaintiff to agree to be transferred to Virginia Beach, Virginia (allegedly under the protections of the IADA as represented to Plaintiff by the Defendants', and in writing), for knowingly misrepresenting to Plaintiff as to the rights, terms, provisions, protections, consequences and guarantees of the IADA thereby causing Plaintiff to (unintelligently) agree to be transferred to Virginia Beach, Virginia under the IADA as agreed upon, for proximately causing (both Illinois and Virginia Beach, Virginia Defendants') Plaintiff to be transferred to Virginia Beach, Virginia (by representing or misrepresenting to Plaintiff, and in writing, as to the terms and provisions of the IADA) all the while knowing full well Plaintiff was not going to be afforded the IADA rights, terms, provisions, protections and guarantees as agreed upon, as represented and as set forth in the written signed IADA contract, for blatantly violating the terms and provisions of the IADA as agreed upon (Plaintiff was not tried within 180 days as agreed upon, and Plaintiff was not afforded his actual and effective first level appeal rights, nor the appointment of counsel to perfect those appeals), and for proximately causing (both Illinois and Virginia Beach Defendants')

37

COUNT IX,   Actual Injuries (Continued)

the Virginia Beach, Virginia convictions and sentences (which were allowed to be secured only as a result of surreptitiously and illegally influencing Plaintiff to be caused to be transferred to Virginia Beach, Virginia under false representations and duress) to be lodged as detainers against Plaintiff at Menard, and then being used in ways adverse and punitive to Plaintiffs interest and due process rights by the Defendants'.

62. Defendants' unconstitutional policies, practices, customs, acts, omissions, and deliberate interference have caused and, unless restrained, will continue to cause Plaintiff to not be conferred with the capability of fully, fairly and meaningfully preserving, preparing, filing and evidencing his contemplated nonfrivolous civil rights complaint in a procedurally correct manner, within the statutes of limitations, in the jurisdictionally correct court, and with the requisite degree of specificity against the responsible liable Illinois and Virginia Defendants' in a form and manner consistent with Plaintiffs constitutional right of meaningful access to the courts.

Actual Injuries
COUNT IX
_____

Violation of the Full Faith and Credit Clause, Article IV Section 1, the Privileges and Immunities Clause, Article IV Section 2, the Supremacy Clause, Article VI, the First Amendment Petition Clause, the Fourteenth Amendment Due Process and Equal Protection Clauses, All of the United States Constitution, and the Interstate Agreement on Detainers Act, under 42 U.S.C. Sections 1983, 1985 and 1986, Based upon Denial of Meaningful Access to the Courts.

63. Plaintiff states, reiterates, realleges and incorporates by reference paragraphs __1__ - __62__, above, into this Count with the same force and effect as if alleged more particularly herein.

38

COUNT IX,   Actual Injuries   (Continued)

64. As a direct and proximate result of the Defendants' aforementioned unconstitutional policies, practices, customs and acts in unreasonably and knowingly implementing and enforcing an ineffective exact cite inmate runner paging system, in not affording Plaintiff adequate access to requested and needed legal research materials, in not providing Plaintiff with adequate time in the law library as requested and needed, in not allowing indigent prisoners (including Plaintiff) to access requested and needed legal research materials outside of the law library to enable them to be afforded the time to read and digest the legal research materials, in limiting Plaintiff to ten (10) pieces of paper and one (1) (now two (2)) flex pens per month, in denying and interfering with Plaintiff's adequate access to his own personal excess legal storage materials as requested and needed, in unreasonably disheralving and unlawfully tampering with, destroying and stealing Plaintiff's irreplaceable intellectual work product and property, evidence, legal research, legal research materials, law books, legal documents and legal records, and in failing to protect and safeguard Plaintiff's irreplaceable intellectual work product and property, legal research, evidence, legal research materials, law books, legal documents and legal records from unreasonable barbaric and terroristical disheralving, tampering, destruction and theft, Plaintiff sustained and will, unless restrained, continue to sustain irreparable injury, including physical, psychological and emotional injury, as well as actual injuries where he has been impeded and frustrated (since 1999) from being conferred with the capability of fully, fairly and meaningfully preserving, preparing, filing, defending and exhausting his actual and contemplated challenges to his 1999 Virginia Beach, Virginia convictions and sentences (Commonwealth v. Blaney, Case No. _____, Virginia Beach Circuit Court; and Commonwealth v. Blaney, Case No _____, Virginia Beach Circuit Court). As to Commonwealth v. Blaney, Case No. _____, above, Plaintiff has never been afforded his constitutional right to have his first level appeal as of right prepared or filed at all — ever. Plaintiff's numerous attempts to access the courts to secure, compel or otherwise mandate his right to file his first level appeal as of right have been impeded and

COUNT IX, Actual Injuries (continued)

frustrated. Plaintiff's numerous attempts to secure, compel or otherwise mandate his right to the appointment of counsel to prepare and file his first appeal as of right have been impeded and frustrated. Plaintiff's numerous attempts to secure, compel or otherwise mandate his right of access to the court records and transcripts (pre-trial, trial and sentencing) so he could use them to help him meaningfully access the courts for his actual and contemplated attempts to secure his right to file his first level appeal have been impeded and frustrated. Finally, Plaintiff's numerous attempts to secure, compel or otherwise mandate his right to the appointment of counsel to prepare and file his effective first level appeal as of right have been impeded and frustrated.    As to Plaintiff's other 1999 convictions and sentences, Commonwealth v. Blaney, Case No. _____. Plaintiff has never been afforded his constitutional right to have his effective first level appeal as of right prepared or filed in a full fair and meaningful manner, and with the assistance of counsel. Plaintiff's numerous attempts to meaningfully access the courts to secure, compel or otherwise mandate his right to have his effective first level appeal as of right prepared and filed in a full fair and meaningful manner, and with the assistance of counsel have been impeded and frustrated. Plaintiff's numerous attempts to secure, compel or otherwise mandate his right of access to the court records and transcripts (pre-trial, trial and sentencing) so he could use them to help him meaningfully access the courts for his actual and contemplated attempts to secure his rights to full, fair and meaningful (and equal) access to the effective first level appeal as of right, and with his right to the appointment of counsel. But for the Defendants' unconstitutional policies, practices, customs, acts and omissions, Plaintiff would have been enabled to and he would have preserved, prepared, filed, defended and exhausted his actual and contemplated challenges to his above 1999 Virginia Beach, Virginia unconstitutional convictions and barbaric sentences in a full, fair, meaningful and equal manner consistent with his rights of meaningful access to the courts. Violations of Plaintiff's Sixth and Fourteenth Amendments to the United States Constitution.

COUNT V, Actual Injuries (Continued)

65. Defendants' unconstitutional policies, practices, customs, acts, omissions, and deliberate interference have caused and, unless restrained, will continue to cause Plaintiff to not be conferred with the capability of fully, fairly, meaningfully and equally preserving, preparing, filing, evidencing, exhausting and defending his actual and contemplated nonfrivolous challenges to his 1999 Virginia Beach, Virginia conviction and sentences in a procedurally correct manner, within the statutes of limitations, in a full and fair manner, in a procedurally correct manner, and with the requisite degree of specificity consistent with Plaintiff's constitutional right of meaningful access to the courts.

Actual Injuries

COUNT V

Violation of the Full Faith and Credit Clause, Article IV Section 1, the Privileges and Immunities Clause, Article IV Section 2, the Supremacy Clause, Article VI, the First Amendment Petition Clause, and the Fourteenth Amendment Due Process and Equal Protection Clauses, All of The United States Constitution, Under 42 U.S.C. Sections 1983, 1985 and 1986, Based upon Denial of Meaningful Access to the Courts.

66. Plaintiff states, reiterates, realleges and incorporates by reference paragraphs 1 - 65, above, into this Count with the same force and effect as if alleged more particularly herein.

67. As a direct and proximate result of the Defendants' aforementioned unconstitutional policies, practices, customs and acts in unreasonably and knowingly implementing and enforcing an ineffective exact cite inmate runner paging system, in not affording Plaintiff adequate access to requested and needed legal research materials, in not providing Plaintiff with adequate time in the law library as requested and needed, in not allowing indigent prisoners (including Plaintiff) to access requested and needed legal research materials outside of the library (law library) to enable them (including Plaintiff) to be afforded the necessary time to read and

41

COUNT X,   Actual Injuries   (Continued)

digest the legal research materials, in limiting Plaintiff to ten (10) pieces of paper and one (1) (now two (2)) flex pens per month, in denying and interfering with Plaintiff's adequate access to his own excess legal storage materials as requested and needed, in unreasonably dishelving and unlawfully tampering with, destroying and stealing Plaintiff's irreplaceable intellectual work product and property, evidence, legal research, legal research materials, law books, legal documents and legal records, and in failing to protect and safeguard Plaintiff's irreplaceable intellectual work product and property, legal research, evidence, legal research materials, law books, legal documents and legal records from unreasonable, barbaric and terroristical dishelving, tampering, destruction and theft, Plaintiff sustained and will continue to sustain irreparable injury, including physical, psychological and emotional injury, as well as actual injuries where he has been impeded and frustrated since approximately 2014 from being conferred with the capability of fully, fairly and meaningfully preserving, preparing and filing his contemplated civil rights complaint in a procedurally correct manner, within the statutes of limitations, and with the requisite degree of specificity (in the jurisdictionally correct court) against the Defendants' for failure to protect where the Defendants' knew of an imminent excessive risk to Plaintiff's safety but were deliberately indifferent and failed to protect (see paragraph #21., above), and for cruel and unusual punishment and deliberate indifference to Plaintiff's serious medical health needs (Eighth Amendment of the United States Constitution) where the Defendants' knowingly placed Plaintiff in a dangerously hot cell, dripping with mace, without adequate ventilation, without adequate soap or face cloth to wash the mace off his face and out of his eyes, with a broken thumb, all without adequate medical treatment or diagnosis, and where the Defendants' failed to perform the necessary surgery on Plaintiff's broken left thumb as suggested and recommended by an outside physician (see paragraph #21., above).

68. Defendants unconstitutional policies, practices, customs, acts, omissions and deliberate interference

42

COUNT VI, Actual Injuries (Continued)

have caused and, unless restrained, will continue to cause Plaintiff to not be conferred with the capability of fully, fairly and meaningfully preserving, preparing, filing and evidencing his contemplated non frivolous civil rights complaint in a procedurally correct manner, within the statutes of limitations, in the jurisdictionally correct court, and with the requisite degree of specificity against the responsible liable Defendants' in a form and manner consistent with Plaintiff's constitutional right of meaningful access to the courts.

Actual Injuries

COUNT VII

Violation of the Full Faith and Credit Clause, Article IV Section 1, the Privileges and Immunities Clause, Article IV Section 2, the Supremacy Clause, Article VI, the First Amendment Petition Clause, and the Fourteenth Amendment Due Process and Equal Protection Clauses, All of the United States Constitution, under 42 U.S.C. Sections 1983, 1985 and 1986, Based upon Denial of Meaningful Access to the Courts.

69. Plaintiff states, reiterates, realleges and incorporates by reference paragraphs 1 - ____, above, into this Count with the same force and effect as if alleged more particularly herein.

70. As a direct and proximate result of the Defendants' aforementioned unconstitutional policies, practices, customs and acts in unreasonably and knowingly implementing and enforcing an ineffective exact cite inmate runner passing system, in not affording Plaintiff adequate access to requested and needed legal research materials, in not providing Plaintiff with adequate time in the law library as requested and needed, in not allowing indigent prisoners (including Plaintiff) to access requested and needed legal research materials outside of the law library to enable them (including Plaintiff) to be afforded the necessary time to read and digest

COUNT VII, Actual Injuries (Continued)

the legal research materials, in limiting Plaintiff to ten (10) pieces of paper and one (1) (now two (2)) flex pens per month, in denying and interfering with Plaintiff's adequate access to his own personal excess legal storage materials as requested and needed, in unreasonably dishelving and unlawfully tampering with, destroying and stealing Plaintiff's irreplaceable intellectual work product and property, evidence, legal research, legal research materials, law books, legal documents and legal records, and in failing to protect and safeguard Plaintiff's irreplaceable intellectual work product and property, legal research, evidence, legal research materials, law books, legal documents and legal records from unreasonable, barbaric and terroristical dishelving, tampering, destruction and theft, Plaintiff sustained and, unless restrained, will continue to sustain irreparable injury, including physical, psychological and emotional injury, as well as actual injuries where he has been impeded and frustrated since inception from being conferred with the capability of fully, fairly and meaningfully preserving, preparing and filing his contemplated civil rights complaints, malpractice, torts and court of claims actions concerning conditions of confinement before the jurisdictionally correct court, in a procedurally correct manner, within the statutes of limitations, and with the requisite degree of specificity against the correct and liable Defendants' for violations of the Eighth and Fourteenth Amendments where the Defendants' were deliberately indifferent to Plaintiff's serious medical health needs, as set forth more fully in paragraphs    , above, and for violations of the First and Fourteenth Amendments (Freedom of Speech and Freedom of Expression, and right to Due Process for deprivation of property), as set forth more fully in paragraphs 12 and 14, above.

71. Defendants' unconstitutional policies, practices, customs, acts, omissions and deliberate interference have caused and, unless restrained, will continue to cause Plaintiff to not be conferred with the capability of fully, fairly and meaningfully preserving, preparing, filing, and evidencing his contemplated civil rights complaints, malpractice (medical)

COUNT II, Actual Injury (Continued)

torts and court of claims actions concerning conditions of confinement before the jurisdictionally correct court, in a procedurally correct manner, within the statutes of limitations, and with the requisite degree of specificity against the responsible liable Defendants' in a form and manner consistent with Plaintiff's constitutional right of meaningful access to the courts.

XI.   Request For Relief

Wherefore, Plaintiff request that this Court:

(a) Declare that Defendants' actions and inactions are unlawful and unconstitutional for the reasons specified above;

(b) Enter a preliminary and permanent injunction directing Defendants to provide:

1.   Training for all correctional staff as part of their initial training and as a required element of their annual training, including training on: how to distinguish between providing adequate access to legal research materials and not providing adequate access to legal research materials; + proper way to search prisoners cells; how to properly safeguard and protect prisoners personal excess legal storage; how to handle grievances, including documenting grievances picked up from prisoners to ensure they are filed and received; not destroying prisoners legal papers, documents and evidence; and how to learn which prisoners are deliberately taking up space in the law library for reasons not related to legitimate legal research.

2.   That Plaintiff shall receive adequate access to legal research materials as needed, free of being charged for such requested and needed adequate access to those legal research materials.

3.   That Plaintiff shall be reimbursed for the thousands of dollars taken off of his inmate trust fund for being charged for adequate access to legal research materials (i.e., case laws, etc...)

46

II. Relief Requested    (Continued)

4. that Defendants' be prevented from taking into account the detainers lodged against Plaintiff in favor of Virginia Beach, Virginia because Plaintiff has no plain, adequate, and complete remedy at law to challenge the detainers due to Defendants' unconstitutional and unlawful actions which impeded and frustrated Plaintiff from being conferred with the capability to fully, fairly and meaningfully challenge the convictions underlying the detainers in the first instance.

(c) Award Plaintiff his cost and reasonable attorneys' fees pursuant to 28 u.s.c. §1988 and 42 u.s.c. §12205.

(d) Award Plaintiff compensatory and punitive damages for the violations of his constitutional rights, and his IADA rights, as to each Count.

(e) Award any such further relief as the Court may deem just.

January 2, 2018

Respectfully submitted,

Jeffrey S. Blaney

Jeffrey Blaney B83793
P.O. Box 1000
Menard, IL 62254

CERTIFICATE OF SERVICE

Pursuant to 28 u.s.c. §1746, 18 u.s.c. §1621, or 735 ILCS § 5/1-109 I declare, under penalty of perjury, that I placed this second Amended Complaint in the hands of a correctional officer, to be delivered to the Menard law library for Electronic Filing on 1-2-2018.

/s/ Jeffrey S. Blaney                                          1-2-2018
Jeffrey S. Blaney
B83793
Plaintiff

47

## V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

See Attached Request For Relief (pgs 46-47, above)

Grant leave to amend after discovery to allow plaintiff to more specifically name the defendants, their responsibilities and liabilities, and to be enabled to more specifically set forth his impeded and frustrated claims and injuries herein.

## VI.    JURY DEMAND (*check one box below*)

The plaintiff ☒ does ☐ does not request a trial by jury.


## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.


Signed on: 1 - 2 - 2018
_____
(date)

P.O. Box 1000
_____
Street Address

Menard, Illinois 62259
_____
City, State, Zip

_____
Signature of Plaintiff

Jeffrey Blaney
_____
Printed Name

B80790
_____
Prisoner Register Number


_____
Signature of Attorney (if any)


(Rev. 7/2010)                    48

Note:

Pursuant to 735 ILCS 5 5/1-109, plaintiff swears under penalty of perjury he caused the enclosed / attached document (Second Amended Complaint) to be delivered on 1-2-2018 to the prison law library for E-Filing.

Machine broken in law library. Mailed by u.s. mail this date

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Jeffrey Blaney
Name

B 80790
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1. Is this a new civil rights complaint or habeas corpus petition?  (Yes) or No

   If this is a habeas case, please circle the related statute:  28 U.S.C. 2241 or 28 U.S.C. 2254

2. Second
   Is this an Amended Complaint or an Amended Habeas Petition?  (Yes) or No

   If yes, please list case number: 3:17-CV-01099 DRH

   If yes, but you do not know the case number mark here: _____

3. Should this document be filed in a pending case?  (Yes) or No

   If yes, please list case number: 3:17-CV-01099 DRH

   If yes, but you do not know the case number mark here: _____

4. Please list the total number of pages being transmitted: 48

5. If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| Second Amended Complaint | 48 |
| | |
| | |
| | |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.

Correspondence From IDOC Inmate

-LEGAL MAIL-



U.S. POSTAGE >> PITNEY BOWES

ZIP 62259  $ 002.87⁰
02 1W
0001389078 JAN 03 2018

Jeffrey Blaney
B 80790
Menard Correctional Center
P.o. Box 1000
Menard, Il 62259

Clerk, United States District Court
Southern District of Illinois
P.O. Box 249
East Saint Louis, Illinois 62202

Legal Mail

Privileged

